# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

SAM ALLEN,

                Plaintiff,

     v.

CORNELIUS AARON PETTUS, JR.,

                Defendant.

Case No. 3:21-cv-00136-SLG

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Before the Court at Docket 55 is Cornelius Aaron Pettus, Jr.'s Motion for Summary Judgment.[1]  Plaintiff Sam Allen responded in opposition at Docket 56. Mr. Pettus replied at Docket 59.  Oral argument was held on July 2, 2024.[2]  As set forth below, Mr. Pettus's motion is **DENIED**.[3]

## BACKGROUND

On the night of September 30, 2019, Anchorage Police Department ("APD") Officer Pettus was on patrol; at approximately 8:00 p.m., he responded to a call regarding an abandoned trailer near downtown Anchorage.[4]  While Officer Pettus

---

[1] *See also* Docket 52 (Mem. in Supp. of Summ. J.).

[2] Docket 65.

[3] At the time of the incident, Mr. Pettus was employed as a police officer with the Anchorage Police Department ("APD").  While Mr. Pettus is no longer employed with APD, for simplicity he will be referred to in this order as Officer Pettus.

[4] Docket 52-1 at ¶ 9.

was investigating the trailer, Mr. Allen approached riding his bicycle and recording his ride with his cell phone.[5]  Mr. Allen's video recording shows Officer Pettus approach Mr. Allen and ask for identification.[6]  Mr. Allen responded by asking Officer Pettus if he suspected Mr. Allen of a crime.[7]  Officer Pettus explained that Mr. Allen had committed several infractions because his bicycle did not have the required reflective materials or a light, as required by Anchorage Municipal Code when biking in the dark.[8]  Mr. Allen responded by riding his bicycle away from Officer Pettus.[9]

Several hours later, at approximately 10:36 p.m., Officer Pettus and APD Officer Stout went to Mr. Allen's home to serve three citations for the bicycle related infractions Officer Pettus had observed earlier in the evening.[10]  In the audio recordings of the interaction, Officer Pettus described that he was approaching Mr. Allen's front door and Officer Pettus is then heard knocking; Mr. Allen came to the door and Officer Pettus told Mr. Allen that he was there to serve the citations from earlier in the evening.[11]  Mr. Allen responded with expletives, to which Officer

---

[5] Docket 52-1 at ¶ 10.

[6] Docket 54, Ex. 3 at 2:52–3:15 (video conventionally filed with the Court).

[7] Docket 54, Ex. 3 at 2:52–3:15.

[8] Docket 54, Ex. 3 at 2:52–3:15.

[9] Docket 54, Ex. 3 at 2:52–3:15.

[10] Docket 52-1 at ¶ 14; Docket 54, Ex. 5 at 0:00–0:55.

[11] Docket 54, Ex. 5 at 1:37–2:03.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 2 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 2 of 21

Pettus replied, "Okay, that's fine."[12]  After attempting to serve the citations on Mr. Allen, the officers walked away from Mr. Allen's home and towards the front of Officer Pettus's police cruiser.[13]  Mr. Allen follows Officer Pettus, and, on the audio recording, he can be heard yelling at the officers using offensive language, including a homophobic slur.[14]  The dashcam footage from Officer Stout's vehicle shows that Mr. Allen exited his home, shirtless and shoeless, wearing only athletic shorts and recording himself with his cell phone, and he followed the officers towards the street.[15]

The interaction then became physical.  As depicted on the dashcam footage, Officer Pettus turned around, and snatched Mr. Allen's phone out of his hands; he stated "this is mine now" and that the phone was "evidence."[16]  Officer Pettus then shoved Mr. Allen in the chest, knocking him back several steps.[17]  Officer Pettus then walked away from Mr. Allen, crossing in front of his police cruiser.[18]  Mr. Allen

---

[12] Docket 54, Ex. 5 at 2:18–2:23.

[13] Docket 57, Ex. 6 at 0:00–0:06 (video conventionally filed with the Court).

[14] Docket 54, Ex. 4 at 0:30–0:45; Docket 54, Ex. 5 at 2:39–2:56.

[15] Docket 57, Ex. 6 at 0:06–0:13.

[16] Docket 57, Ex. 6 at 0:09–0:12; Docket 54, Ex. 4 at 0:44–0:49; Docket 54, Ex. 5 at 2:55–2:59.

[17] Docket 57, Ex. 6 at 0:15–0:18.

[18] Docket 57, Ex. 6 at 0:19–0:24, Docket 57, Ex. 7 at 0:00–0:05.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 3 of 21
Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 3 of 21

followed closely behind.[19]  Officer Pettus turned back toward Mr. Allen.[20]  Officer Pettus asked Mr. Allen "what's up?" to which Mr. Allen also asked "what's up?"[21]  Then Officer Pettus punched Mr. Allen in the face and attempted to kick him.[22]  Officer Pettus asked Mr. Allen, "Want more?"[23]  Officer Pettus then deployed pepper spray and ultimately handcuffed Mr. Allen.[24]  In the moments leading up to the altercation, Officer Pettus did not order or direct Mr. Allen to step back or stay further away from the officers; nor did he warn Mr. Allen that he was going to use force.[25]

Mr. Allen sued the Municipality of Anchorage ("MOA") and Officers Pettus and Stout in the Superior Court for the State of Alaska.[26]  Defendants removed the action to this Court.[27]  The MOA and Officer Stout were subsequently dismissed from the lawsuit, leaving only Mr. Allen's claims against Officer Pettus.[28]

Mr. Allen's complaint alleges that Officer Pettus used excessive force in

---

[19] Docket 57, Ex. 7 at 0:00–0:06.

[20] Docket 57, Ex. 6 at 0:23–0:25; Docket 57, Ex. 7 at 0:04–0:06.

[21] Docket 54, Ex. 4 at 0:51–2:08, Docket 54, Ex. 5 at 3:05–4:16.

[22] Docket 57, Ex. 7 at 0:06–0:14; Docket 54, Ex. 4 at 0:51–2:08, Docket 54, Ex. 5 at 3:05–4:16.

[23] Docket 54, Ex. 4 at 1:03; Docket 54, Ex. 5 at 3:14.

[24] Docket 54, Ex. 4 at 0:51–2:08, Docket 54, Ex. 5 at 3:05–4:16, Docket 57, Ex. 7 at 0:06–0:19.

[25] *See* Docket 54, Ex. 4 at 0:00–2:00, Docket 54, Ex. 5 at 1:37–4:30.

[26] Docket 1-2 at 1.

[27] Docket 1 at 1–3.

[28] Docket 28; Docket 29.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 4 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 4 of 21

unlawfully arresting him in violation of the Fourth Amendment right against unlawful search and seizure, and that Officer Pettus violated Mr. Allen's civil rights by submitting false reports about the incident.[29]  Officer Pettus moved for summary judgment, asserting qualified immunity.[30]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden of showing the absence of a genuine dispute of material fact lies with the movant.[31] If the movant meets this burden, the non-moving party must demonstrate "specific facts showing that there is a genuine issue for trial."[32]  The non-moving party may not rely on "mere allegations or denials"; rather, to reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[33]  When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws

---

[29] Docket 1-2 at ¶¶ 22, 36, 38.

[30] Docket 52 at 12–17.

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[32] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[33] *Anderson*, 477 U.S. at 248-49 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 5 of 21

Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 5 of 21

"all justifiable inferences" in the non-moving party's favor.[34]

Where "[t]he parties dispute some facts necessary to decide the issue of qualified immunity on excessive force . . . summary judgment is appropriate only if Defendants are entitled to qualified immunity on the facts as alleged by the non-moving party."[35] However, when there is video evidence of the conduct at issue, a court should "view[] the facts in the light depicted by the videotape."[36]

## DISCUSSION

Officer Pettus asserts that he is entitled to qualified immunity regarding Mr. Allen's claims for excessive force.[37] He also maintains that he is entitled to summary judgment on Mr. Allen's fabrication-of-evidence claim.[38] Mr. Allen responds that qualified immunity does not shield Officer Pettus from liability.[39] The Court considers each claim in turn.

Under the doctrine of qualified immunity, "courts may not award damages against a government official in his personal capacity unless the official violated a statutory or constitutional right, and the right was clearly established at the time of

---

[34] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[35] *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007).

[36] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[37] Docket 52 at 12–17.

[38] Docket 59 at 1–4.

[39] Docket 56 at 3–4, 9–10.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 6 of 21

Case 3:21-cv-00136-SLG   Document 67   Filed 11/19/24   Page 6 of 21

the challenged conduct."[40] The qualified immunity analysis consists of two inquiries: (1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and (2) whether that right was clearly established at the time the defendant acted.[41] Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[42] "For a right to be clearly established, case law must ordinarily have been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law."[43] A plaintiff generally "bears the burden of showing that the rights allegedly violated were clearly established" at the time of the incident.[44]

## I. Excessive Force Claim

### a. Violation of a Constitutional Right

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment—that is, whether the officer's conduct was

---

[40] *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011) (internal quotation marks omitted)).

[41] *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc).

[42] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[43] *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1117 (9th Cir. 2017) (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)).

[44] *Shafer*, 868 F.3d at 1118 (quoting *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000) (internal quotation marks omitted)).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 7 of 21

Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 7 of 21

objectively reasonable considering the facts and circumstances at hand.[45]   In assessing a claim of excessive force, a court considers the three non-exclusive factors set forth by the Supreme Court in *Graham v. Connor*.[46]  Those factors are: (1) the severity of the crime at issue; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual was actively resisting arrest or attempting to evade arrest by flight.[47]  The Ninth Circuit has repeatedly emphasized that "the most important *Graham* factor" is whether the individual posed an immediate threat to the safety of the officers or others.[48]

Regarding the first factor—the severity of the crime—Officer Pettus maintains that, when Mr. Allen came out of his house and began yelling and approaching the officers, he disturbed the peace, a misdemeanor offense under AMC § 8.30.120(A)(2).[49]  He also maintains that when Mr. Allen "failed to back down and instead squared off against" Officer Pettus, he committed the misdemeanor offenses of assault and "resisting and/or interfering with a police

---

[45] *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

[46] *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022).

[47] *Graham*, 490 U.S. at 396.

[48] *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (internal quotation marks omitted)

[49] Docket 52 at 16–17; Anchorage Mun. Code § 8.30.120(A)(2) ("It is unlawful for any person to . . . [k]nowingly generate loud noise in a public place with the intent to disturb others or in reckless disregard of the peace and privacy of others.").

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 8 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 8 of 21

officer."[50]  And Officer Pettus summarily states that "the severity of the crime at issue . . . favor[s] dismissal of this case" because Mr. Allen's "charge" toward Officer Pettus constitutes "[a]ssault on a police officer[,] . . . a serious crime."[51]  Officer Pettus filed an expert report that concluded that Mr. Allen took an aggressive or fighting stance and that, as a result,  Officer Pettus's use of force complied with APD policy.[52]

In his response, Mr. Allen points to evidence contradicting Officer Pettus's assertion that Mr. Allen assumed a fighting stance and the conclusion of the defense expert that Officer Pettus's use of force complied with APD policy.[53]  Mr. Allen submitted grand jury testimony by several APD officers who reviewed the video of the incident and concluded that Mr. Allen did not assume a fighting stance

---

[50] Docket 52 at 16–17; Anchorage Mun. Code § 8.10.010(B) ("A person commits an assault if . . . [t]hat person recklessly causes physical injury to another person; . . . [w]ith criminal negligence that person causes physical injury . . . by means of a dangerous instrument; . . . [b]y words or other conduct that person recklessly places another person in fear of imminent physical injury; or . . . [t]hat person recklessly uses words or other conduct which places a family member in reasonable fear of imminent physical injury . . . ."); Anchorage Mun. Code § 8.30.010 ("A person commits the crime of resisting or interfering with a peace officer when . . . [t]he person intentionally, recklessly, or knowingly delays or obstructs the person's own arrest by the use of force; . . . [t]he person intentionally, recklessly, or knowingly delays or obstructs the person's arrest by . . . engaging in a stand-off . . . ; [t]he person intentionally, recklessly, or knowingly delays or obstructs a police officer's active investigation of a crime by fleeing after having been told to stop; . . . [t]he person . . . disobeys the lawful orders of any public officer . . . .").

[51] Docket 52 at 12.

[52] Docket 53-3 at 10, 13 (Expert Report of James Borden).

[53] Docket 56 at 5–9 (citing Docket 57, Ex. 1 (APD Officer Streff Grand Jury Test.); Docket 57, Ex. 2 (APD Officer Bowser Grand Jury Test.); Docket 57, Ex. 3 (APD Officer Hickman Grand Jury Test.); Docket 57, Ex. 4 (FBI Agent Oberlander Grand Jury Test.); Docket 57, Exs. 6 & 7 (video recordings of the incident); Docket 57, Ex. 8 (Mr. Allen Grand Jury Test.).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 9 of 21

Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 9 of 21

and that Officer Pettus's use of force was unreasonable.[54] The video provided also appears to contradict the defense expert report's conclusion that Mr. Allen assumed a fighting stance before Officer Pettus punched him. To the contrary, the video shows that Mr. Allen has his arms down at his sides and that he formed a fist only after he was punched by Officer Pettus.[55] These disputes of fact are also relevant to the second *Graham* factor, whether Mr. Allen posed an immediate threat to the officers.[56] Viewing the facts in the light most favorable to Mr. Allen—Mr. Allen did not assume a fighting stance, did not clench his fists, and was not a threat to the officers—a jury could find that the first and second *Graham* factors weigh against a finding that Officer Pettus's use was force was reasonable.

As to the third factor—whether Mr. Allen was actively resisting arrest or attempting to flee—Officer Pettus used force before he began his arrest of Mr. Allen. Officer Pettus contends that this factor weighs in favor of finding that the use of force was reasonable because "Mr. Allen's actions show that he intends to

---

[54] Docket 57, Ex. 1 at 12 (APD Officer Streff Grand Jury Test.) ("I did not see any sort of fighting stance taken."); Docket 57, Ex. 2 at 14 (APD Officer Bowser Grand Jury Test.) ("[W]ould I have done that[?] [N]o absolutely not."); Docket 57, Ex. 3 at 19 (APD Officer Hickman Grand Jury Test.) ("[T]hat looks like an unjustified use of force in my opinion.").

[55] *Compare* Docket 57, Ex. 7 at 0:05–0:08, *with* Docket 53-3 at 10.

[56] *Hart v. City of Redwood City*, 99 F.4th 543, 552–53 (9th Cir. 2024) (holding—in a case where the plaintiff approached officers while wielding a knife and refused commands to drop the knife—that "analyzing the severity of crimes committed against the officers in a case like this ties [the severity of the crime] *Graham* factor almost inextricably to the immediate threat factor. But that is hardly surprising because many of the actions constituting an immediate threat to others are also crimes.").

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 10 of 21

Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 10 of 21

retrieve his phone by any means necessary and evade arrest thereafter."[57]  Officer Pettus does not point to anything in the record to support this assertion.  Upon viewing the video of the incident, the Court finds that a reasonable jury could find that Mr. Allen was not fleeing or evading Officer Pettus at the time Officer Pettus used force against him.  Therefore, the third factor weighs against a finding that the use of force was reasonable.

In sum, disputes of material fact remain as to the severity of the crime at issue and if and how much of a threat Mr. Allen posed to the officers before Officer Pettus used force.  Viewing the evidence in the light most favorable to Mr. Allen, a jury could find that the use of force was unreasonable.  The Court therefore denies summary judgment to Officer Pettus on the basis that there was no constitutional violation.

### b.  Clearly Established Right

In assessing whether a right is clearly established, courts look to binding precedent of the Supreme Court or the Ninth Circuit.[58]  "[I]n the absence of binding precedent, [courts] 'look to whatever decisional law is available to ascertain whether the law is clearly established' for qualified immunity purposes, including decisions of state courts, other circuits, and district courts."[59]  Mr. Allen relies on

---

[57] Docket 52 at 12.

[58] *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004).

[59] *Id.* (quoting *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1060 (9th Cir. 2003)).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 11 of 21

two out-of-circuit cases in support of his claim that his right to be free from excessive force under the circumstances at issue in this case was clearly established.[60]

Mr. Allen first cites to *Phelps v. Coy*, a Sixth Circuit case, for the proposition that Officer Pettus "was on notice that punching a non-threatening individual in the face was unconstitutional."[61] In *Phelps*, officers arrested Mr. Phelps and took him to the police station for booking.[62] While he was handcuffed, a booking officer asked Mr. Phelps to lift his feet; when he complied, one of his feet was close to the face of the officer, who pushed the foot away.[63] Another officer observed the interaction and believed that Mr. Phelps had attempted to kick the booking officer.[64] The other officer tackled Mr. Phelps, hit him twice in the face, and then banged his head into the floor at least three times.[65] The Sixth Circuit held that the use of force violated the Fourth Amendment and that Mr. Phelps's right to be free from such force was clearly established.[66]

---

[60] Docket 56 at 9–10 (first citing *Phelps v. Coy*, 286 F.3d 295 (6th Cir. 2002); and then citing *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012)).

[61] Docket 56 at 9.

[62] *Phelps*, 286 F.3d at 297.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 302.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 12 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 12 of 21

Mr. Allen's reliance on *Phelps* is misplaced because the circumstances and force used are dramatically different. First, Mr. Phelps was restrained by handcuffs and had the weight of the officer on top of him. Additionally, Mr. Phelps's incident took place inside the police station. In contrast, Mr. Allen was unrestrained outside on a dark street in the rain.[67] Second, in *Phelps*, the officer struck the restrained Mr. Phelps in the face several times and then banged his head into the ground; here, Officer Pettus punched an unrestrained Mr. Allen once, attempted one kick, and used pepper spray.[68] The Court finds that *Phelps* does not clearly establish Mr. Allen's right to be free from the force used by Officer Pettus.

Mr. Allen also points to *Newman v. Guedry* for the proposition that the force used by Officer Pettus was so obviously excessive that he does not need to provide a similar case to demonstrate a clearly established right.[69] In *Newman*, Mr. Newman was standing next to an automobile when an officer pushed Mr. Newman forward onto the car and hit him 13 times with a baton; a second officer tased Mr. Newman twice before he fell to the ground; Mr. Newman was tased a third time while lying on the ground.[70] The Fifth Circuit held that "[n]one of the *Graham* factors justifie[d]" the use of the taser and that, "'in an obvious case,' the *Graham*

---

[67] *Compare id.* at 297, *with* Docket 57, Ex. 6 at 0:10–0:26, *and* Docket 57, Ex. 7 at 0:00–0:05.

[68] *Compare Phelps*, 286 F.3d at 297, *with* Docket 57, Ex. 6 at 0:10–0:26, *and* Docket 57, Ex. 7 at 0:00–0:05.

[69] Docket 56 at 9–10 (citing 703 F.3d 757, 764 (5th Cir. 2012)).

[70] *Newman*, 703 F.3d at 759–60.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 13 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 13 of 21

excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'"[71]

*Guedry* is an instance of "the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances."[72]   But the force used by Officer Pettus was significantly less than the force used against Mr. Newman.   Mr. Allen fails to establish why this case should be considered one of the "rare obvious case[s]."[73]   As such, the Court finds that neither case relied on by Mr. Allen clearly established Mr. Allen's right to be free from the force used by Officer Pettus in this case.

While it is Mr. Allen's burden to show that the right at issue was clearly established, the Supreme Court has instructed that courts should not ignore relevant precedent even if that precedent was not cited by the parties to the district court.[74]   When there are disputed factual issues that are necessary to a qualified immunity decision, these issues must first be determined by the jury before the

---

[71] *Newman*, 703 F.3d at 764 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

[72] *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam) (internal quotation marks omitted)).

[73] *Wesby*, 583 U.S. at 64.

[74] *See Elder v. Holloway*, 510 U.S. 510, 512 (1994) ("[A]ppellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by, the district court."); *see also Calonge v. City of San Jose*, 104 F.4th 39, 47–48 (9th Cir. 2024) (relying on *Elder* to consider precedent cited on appeal that was not cited to the district court in reviewing qualified immunity issue).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 14 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 14 of 21

court can rule on qualified immunity.[75]  Consistent with this case law, there may be particular cases in which a special verdict on a discrete fact is warranted in order to resolve a qualified immunity claim.

The Court believes this to be one such case.  As noted, disputes of material fact remain as to whether Mr. Allen had closed his fists, assumed a fighting stance, or otherwise posed a threat to the officers and whether the severity of the purported crimes justified Officer Pettus's use of force.   The resolution of these factual disputes by the jury will bear on the Court's determination of whether case law put Officer Pettus on notice that Mr. Allen had a clearly established right.

In *Blankenhorn v. City of Orange*, an officer argued that he punched the plaintiff in order to get him to move his arms from underneath him so that the officer could handcuff him.[76]  The plaintiff claimed that he never pinned his arms underneath himself.[77]  The Ninth Circuit held that "a rational jury could find that if Blankenhorn did not maneuver his arms beneath his body it eliminated the need for any use of force to release them, and thus that [the officer's] punches were not reasonably justified by the circumstances as he claims."[78]

The same is true here.  Officer Pettus contends that he used force because

---

[75] *Morales v. Fry*, 873 F.3d 817, 824 (9th Cir. 2017); *see also Nehad v. Browder*, 929 F.3d 1125, 1140 (9th Cir. 2019).

[76] 485 F.3d 463, 469–70 (9th Cir. 2007).

[77] *Id.* at 470.

[78] *Id.* at 480.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 15 of 21

Mr. Allen assumed a fighting stance and Officer Pettus believed Mr. Allen was going to strike him. If a jury disagrees and finds that Mr. Allen was not a threat and that the *Graham* factors otherwise do not support a finding that the force was reasonable, then Officer Pettus's use of force was not reasonably justified by the circumstances.

Additionally, in *Young v. County of Los Angeles*, the Ninth Circuit held that "[t]he principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest, was . . . well established in 2001."[79] As such, the Court held that the defendant officer in *Young* was on notice in 2007 that "to pepper spray an individual and strike him with a baton for disobeying a traffic officer's order to get back in his car (and sitting instead on the curb eating his broccoli) constituted a violation of the Fourth Amendment."[80]

Viewing the facts in the light most favorable to Mr. Allen, he was suspected of minor crimes, posed no apparent threat to officer safety, and did not resist arrest or disobey an order. Therefore, in light of the case law above, if the jury were to find the facts as posited by Mr. Allen, Mr. Allen's right to be free from Officer Pettus's punch, kick, and use of pepper spray was clearly established at the time of the incident. Accordingly, the Court denies Officer Pettus's motion for summary

---

[79] 655 F.3d 1156, 1168 (9th Cir. 2011).

[80] *Id.*

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 16 of 21

Case 3:21-cv-00136-SLG     Document 67     Filed 11/19/24     Page 16 of 21

judgment based on qualified immunity as to Mr. Allen's excessive force claim.[81]

## II. Fabrication of Evidence

Officer Pettus contends that he is entitled to summary judgment on Mr. Allen's claim that Officer Pettus submitted a false report in violation of Mr. Allen's civil rights because "Mr. Allen presents no evidence of fabrication."[82]

Mr. Allen's complaint alleges that "Officer Pettus wrote a false report indicating that the plaintiff attempted to fight him" and that "defendants filed one or more false reports suggesting that their conduct was somehow justified."[83] And "defendants incarcerated [Mr. Allen] in jail for several days."[84] In his opposition to summary judgment, Mr. Allen cited *Deveraux v. Abbey* for the proposition that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[85] Mr. Allen adds that Officer "Pettus'[s] claim that Mr. Allen assumed a fighting stance was contradicted by Mr. Allen, the video, and other officers' testimony reviewing the audio, video and based on their own experience

---

[81] Officer Pettus construed Mr. Allen's complaint as also raising an unlawful arrest claim. *See* Docket 52 at 15–17. However, in his opposition brief, Mr. Allen only addresses his excessive force claim. *See* Docket 56 at 2–10. The Court therefore does not construe Mr. Allen's complaint as raising a standalone claim for unlawful arrest.

[82] Docket 59 at 1.

[83] Docket 1-2 at ¶¶ 22, 28.

[84] Docket 1-2 at ¶ 25.

[85] Docket 56 at 8–9 (quoting 263 F.3d 1070, 1074–75 (9th Cir. 2001)).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 17 of 21

and training."[86]

"To prevail on a § 1983 claim of deliberate fabrication, a plaintiff must prove that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty."[87] "A plaintiff can prove deliberate fabrication in two ways. 'Most basically, a plaintiff can produce direct evidence of deliberate fabrication.'"[88] For example, direct evidence includes "when 'an interviewer . . . deliberately mischaracterizes witness statements in her investigative report.'"[89] "Alternatively, a plaintiff can produce circumstantial evidence related to a defendant's motive."[90] "To prove fabrication using circumstantial motive evidence, a plaintiff must establish that either: (a) '[d]efendants continued their investigation of [plaintiff] despite the fact that they knew or should have known that he was innocent'; or (b) '[d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information.'"[91]

Mr. Allen filed grand jury testimony by APD Officer Josiah Streff, in which he

---

[86] Docket 56 at 9 (citing Docket 57, Exs. 1–8).

[87] *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017).

[88] *Richards v. Cnty. of San Bernardino*, 39 F.4th 562, 569 (9th Cir. 2022) (quoting *Caldwell v. City & Cty. of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018)).

[89] *Spencer*, 857 F.3d at 793 (quoting *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)) (alteration in original).

[90] *Caldwell*, 889 F.3d at 1112.

[91] *Richards*, 39 F.4th at 569 (quoting *Devereaux*, 263 F.3d at 1076).

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 18 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 18 of 21

indicated that he had read Officer Pettus's police reports and that they alleged that Mr. Allen took a fighting stance "or something like that."[92] After Officer Streff viewed the video of the altercation, he was asked if the video was consistent with the version of events in Officer Pettus's report; he answered, "No."[93] Federal Bureau of Investigation Agent Kirk Oberlander testified that Officer Pettus wrote in his report that Mr. Allen was taking a fighting stance and that Officer Pettus felt that Mr. Allen was going to strike him, but Agent Oberlander believed that the force used by Officer Pettus "[b]eyond the first shove to gain distance" was unjustified.[94] APD Officer Kelly Huston testified that her husband—Sergeant Scott Huston, who was Officer Pettus's patrol sergeant at the time of the incident—called her and asked her to save a copy of the report that Officer Pettus wrote.[95] That was because Officer Pettus had asked Sergeant Huston to reject his report. Officer Huston explained that once an officer writes a report, it is submitted to the officer's sergeant for review and approval. Officers often forget something and want to add it after they have already submitted their report, so they ask their sergeant to reject the report so that they can submit a revised one.[96] Ultimately, the copy of Officer

---

[92] Docket 57, Ex. 1 at 9.

[93] Docket 57, Ex. 1 at 12.

[94] Docket 57, Ex. 4 at 12–13.

[95] Docket 57, Ex. 5 at 10–11.

[96] Docket 57, Ex. 5 at 10–14.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 19 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 19 of 21

Pettus's original report went to another sergeant.[97]

Based on the above evidence and drawing all reasonable inferences in Mr. Allen's favor, a reasonable jury could conclude that Officer Pettus deliberately included a false allegation in his report that Mr. Allen assumed a fighting stance, resulting in Mr. Allen's detention for several days and the state charges against Mr. Allen that were ultimately dropped.

Viewing the evidence in the light most favorable to Mr. Allen, the Court finds that material disputes of fact remain as to whether Officer Pettus deliberately fabricated evidence in his police report that Mr. Allen assumed a fighting stance. As such, the Court denies Officer Pettus summary judgment on the fabrication-of-evidence claim.[98]

## **CONCLUSION**

In light of the foregoing, the Court finds that disputes of material fact remain as to Mr. Allen's excessive force claim that preclude the Court from making a qualified immunity determination as a matter of law at this time. Therefore, Officer Pettus's Motion at Docket 55 is **DENIED.** At trial, the Court intends to issue special interrogatories to the jury as to the material disputes of fact that are relevant to the qualified immunity issue, including whether Mr. Allen clenched his fists, assumed

---

[97] Docket 57, Ex. 5 at 17.

[98] Officer Pettus does not invoke qualified immunity as to the fabrication-of-evidence claim. Therefore, the Court is not considering that defense at this time.

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 20 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 20 of 21

a fighting stance, or otherwise posed a threat to the officers.

The Court sets a telephonic trial scheduling conference for **December 2, 2024, at 10:00 a.m.** All parties shall participate telephonically by dialing 571-353-2301 (Call ID 020262828, Pin 487051) approximately five minutes before the scheduled hearing time.

DATED this 19th day of November 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

Case No. 3:21-cv-00136-SLG, *Allen v. Pettus*
Order on Motion for Summary Judgment
Page 21 of 21

Case 3:21-cv-00136-SLG    Document 67    Filed 11/19/24    Page 21 of 21